MERRITT (FORSAITH v.). See Case No. 4,946.

MERRITT v. The J. B. LUNT. See Case No. 7,247.

## Case No. 9,484.

### MERRITT et al. v. SACKETT et al.

[2 Am. Law J. (N. S.) 341; 12 Law Rep. 511.]

District Court, N. D. New York. Nov. 27, 1849.

COURTS—ADMIRALTY—MATERIAL MEN—SUIT IN PERSONAM.

[Under rule 12 prescribed by the supreme court in 1845, admiralty courts have no jurisdiction over suits in personam brought by material men to enforce payment of their claims.]

[Cited in Cunningham v. Hall, Case No. 3,-481.]

[This was a proceeding by Jacob T. Merritt and others against Edward Sackett and George Sackett for the value of supplies furnished the defendants for the schooners Arkansas and Alabama.]

CONKLING, District Judge. This is an action in personam, on the admiralty side of the court, instituted under the act of congress of February 26, 1845 [5 Stat. 726], conferring a quasi admiralty jurisdiction upon the district courts of the United States of certain cases arising out of the commerce and navigation of the lakes. The suit is for the value of certain articles of ship chandlery sold by the libellants, who are dealers in such articles, having their place of business in the city of New York, to the defendants, resident at Sacketts Harbor, in this district, alleged to have been designed for use, by the defendants, in the completion and fitting out of the schooners Arkansas and Alabama, at the latter place. A warrant of arrest having been issued and returned executed, it is now, on the return day of the process, objected, in behalf of the defendant, that the court has no jurisdiction of the case, and that the defendant ought therefore to be discharged from arrest, and the libel dismissed. The objection is founded on the domestic character of the vessel, and I am the more anxious explicitly to state the grounds of the conclusion at which I have arrived, because it was at variance with what was said by me some months ago, when called on to decide the admission of a libel of the like nature with this. My answer in that case to the application of the proctor for an order directing process to issue, was as follows: "Whether this suit is maintainable is a question which has not yet been directly decided by the supreme court. The admiralty jurisdiction of the American courts of suits in personam, by material men for labor, materials and supplies, in a home port, was however distinctly asserted by Mr. Justice Story in delivering the opinion of the court in the early case of The General Smith [4 Wheat. (17 U. S.) 438], and follows as a necessary consequence of the doctrines constantly asserted and acted upon by him in his circuit. The principle upon

which he is well known to have uniformly insisted is, that the admiralty jurisdiction in personam extends to all maritime contracts; and the contract in question is clearly of that character,—whether in the case of a domestic or of a foreign vessel. It is upon this ground alone that the admiralty takes cognizance of liens in favor of material men, given by state laws, for repairs and supplies furnished in a home port. Several of the judges of the supreme court, in dissenting opinions, and at the circuit, have controverted this general principle; but it has been uniformly acquiesced in and repeatedly applied by the majority of the court, as it has been by several of the district courts. Under these circumstances, I do not feel at liberty to decline to take cognizance of suits in personam, in favor of material men in the cases of vessels embraced by the act of congress, although the services may have been rendered, or the materials or supplies furnished, at the place of the owner's residence."

In the foregoing review of the question, it will be seen, no reference is made to rule 12 of the rules prescribed by the supreme court of the United States, 1845, to regulate the practice of the courts of the United States, in cases of admiralty and maritime jurisdiction. In fact the rule was then altogether overlooked. It is as follows: "In all suits by material men, for supplies, or repairs, or other necessaries for a foreign ship, or for a ship in a foreign port, the libellant may proceed against the freight and ship in rem, or against the master or owner alone in personam; and the like proceedings in rem shall apply in cases of domestic ships, where, by the local law, a lien is given to material men for supplies, repairs or other necessaries." The direct object of this rule was to prescribe, or declare, the various forms of remedy to which those known in admiralty jurisprudence as material men shall have a right to resort for the enforcement of their claims. It is one of a series of rules, by the others of which it is immediately followed, having the like objects in relation to other subjects of admiralty jurisdiction. The latter branch of the rule, authorizing a suit in rem, for supplies furnished to a domestic vessel, where by the local law a lien is given, may not necessarily require a construction which would exclude a farther remedy in personam, though there is strong color for such an interpretation, according to the legal maxim, "expressio unis exclusio est alterius." But these rules imply a consciousness, on the part of the judges of the supreme court, of the right, and, indeed, of the necessity, of exercising to some extent what savors strongly of discretionary authority, in determining the limits and conditions of this branch of the jurisdiction of the American courts; and no one who is familiar with the uncertainty and difficulty by which the subject, as left by the constitution and the judicial act of 1789 [1 Stat.

73], was environed, and the discussions to which it has given rise, can fail to perceive the impossibility of excluding considerations of expediency altogether from the inquiry. This is a point of some importance in the present case, because, although the general principle has been incidentally asserted on several occasions by the supreme court, that all maritime contracts fall within the scope of the admiralty jurisdiction, (and the contracts of material men are reputed to be of this description), yet what was said in the case of The General Smith 4 Wheat. [17 U. S.] 438, as to the right of the material man to sue in personam, in the admiralty, was but an obiter dictum; and in the subsequent case of Ramsey v. Allegre, 12 Wheat. [25 U. S.] 611, the court expressly waived any decision upon the question of this right, and one of the judges, in a very elaborate opinion, unequivocally denied its existence.

Under these circumstances, it seems not unreasonable to suppose that the supreme court thought proper, if not absolutely (by implication), to repudiate the remedy in personam in the case of domestic vessels, at least to reserve the question for future consideration. The contract of marine insurance is also, so far as I can discern, undeniably a maritime contract, and, as such, was very naturally held by the late Mr. Justice Story to be comprised within the admiralty jurisdiction of the courts of the United States. Still, in no instance is it believed, out of the First circuit, has a suit in the admiralty been maintained or instituted on this species of contract; and in the case of New Jersey Steam Nav. Co. v. Merchants' Bank of Boston, 6 How. [47 U. S.] 344, the distinguished counsel for the libellant, though arguing in favor of a comprehensive admiralty jurisdiction, expressly disclaimed its existence in the case of marine insurance. In order, however, to justify this disclaimer, it became necessary for him to qualify the general principle above mentioned, affirming the admiralty jurisdiction over all contracts in their nature maritime, and virtually to limit it to these for the performance of maritime services.

But the principle thus restricted, would exclude material men, as well in the case of foreign as of domestic vessels, and also bottomry bonds, which have at all times been admitted to be within the admiralty jurisdiction, even in England. If, therefore, policies of insurance are to be excluded from the admiralty jurisdiction, the exception, so far as I am able to discern, will be purely arbitrary; and yet the impression seems to be generally entertained, that the supreme court is not likely, if the question should ever be brought before it for decision, to uphold the admiralty jurisdiction over this species of contract.

With respect to the remedies for materials or supplies furnished for a vessel in her home port, it is also to be observed, that it is only in virtue of the lien given by a state law that the admiralty jurisdiction is held to attach at

all; and if the question has not already been determined, it might be worth while to consider, whether it would not be better to leave such liens to be enforced in the state tribunals alone. But the ground on which the established doctrine rests is, that while the lien given by the local law is to be regarded as in its nature maritime, and therefore fit to be enforced by admiralty process, yet that no lien is given by the general maritime law; the contract being but an ordinary personal transaction between the parties residing in the same place, and the exigencies of commerce not requiring that any lien should be implied. Would it be absurd, then, to hold the contract to be one with which the maritime law has no especial concern, and which therefore confers no right to resort to a maritime court for its enforcement?

Without pursuing the inquiry further, my conclusion is, that the omission in the rule above cited, of any mention of a remedy in personam in favor of material men in a home port, was made ex industria, and was designed to be significant. For this reason alone, therefore, I deem it more safe and discreet, for the present at least, to abstain from the exercise of this jurisdiction. There is another consideration also connected with the subject, which, under existing circumstances, is fitted to awaken additional caution in dealing with this question, and which might, perhaps not improperly, in some degree influence a decision upon the propriety of assuming a doubtful authority. To render the remedy in question more effective than a suit in common law in a state court, resort must be had to the process of arrest against the person of defendant; and it was doubtless in the hope of deriving superior advantage from the employment of this form of process, that the libellants have seen fit to come into this court at all. But imprisonment for debt by means of process issued from the state courts, having in this state been abolished by law, its continuance, through the process of the national courts, in cases of admiralty jurisdiction, is regarded with jealousy and distrust. In a recent case, the legality of such process from this court was denied, but was upheld by the court. And in the present case, as I am informed, a writ of habeas corpus has been sued out by the defendant, before one of the state judges, on the ground that the process of arrest was not warranted by law. Collision between the state and national authorities is always to be deeply regretted, and no enlightened and patriotic functionary can be insensible to the duty of carefully abstaining, as far as he can consistently with paramount obligations, from all acts likely to lead to so deplorable a result.